UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DAMAINE PATTON,
   Plaintiff,

vs.                                              Case No.  03-1084

DONALD SNYDER, et al.,
   Defendants.

## ORDER

This cause is before the court for consideration of the defendant's second motion for summary judgment. [d/e 23]. The defendants' motion was filed on January 13, 2005. The plaintiff filed a motion asking for a court order to allow him access to his legal materials so he could file a response. The plaintiff did not provide a copy of this motion to the defendants. Therefore, the court asked the defendants to respond to the plaintiff's claims. The motion was denied when it was demonstrated that the plaintiff was allowed access to materials when he made a proper request. April 7, 2005 Court Order. The plaintiff also asked to continue his case generally. This motion was also denied. May 4, 2005 Text Order.

The plaintiff has had several months to respond to the dispositive motion, but has failed to provide any response. The court will consider the motion for summary judgement without input from the plaintiff.

## I.  BACKGROUND

The plaintiff, Damaine Patton, brought this action pursuant to 42 U.S.C. §1983 for alleged constitutional violations at Pontiac Correctional Center. The plaintiff named two defendants including Illinois Department of Corrections Director Donald Snyder and Warden James Schomig.

The plaintiff states that he has received numerous disciplinary tickets based on the offense of "insolence."  The plaintiff alleges that this offense is both unconstitutionally vague on its face and in the way it is applied at the Pontiac Correctional Center for excessive noise. The plaintiff states that memos warning against excessive noise have not been posted and there is no warning in the Prisoner Orientation Manual.  The plaintiff also states that the rule is subjective, and what is loud for one officer may not be loud for another.  Lastly, the plaintiff asserts that the enforcement of the rule violates his Fourteenth, Eighth and First amendment rights.

The plaintiff's complaint alleges that he has received approximately 45 tickets for insolence.  The defendants state that the records indicate the plaintiff has received in excess of 60 tickets relating to noise policy violations which also include tickets for Disobeying a Direct Order.

Major Francis Melvin states that noise levels in maximum security correctional facilities have been an area of administrative concern for some time.

> Excessive noise levels in living units may delay or hamper staff members' response to an emergency situation, since the noise may cover the sound of an assault, accident or medical emergency. Even after an incident is reported to staff, excessive noise may hamper security or medical personnel trying to coordinate a first response to the emergency. Furthermore, regulating the noise level in a living unit will allow offenders to sleep as desired, and to reside in a calmer environment. (Def. Memo, Melvin Aff., p. 1, para. 4)

Major Melvin states that offenders are therefore prohibited from shouting or yelling, kicking or, banging on cell doors. Inmates are also required to wear headphones with audio-visual equipment.

Melvin says Pontiac Correctional Center made a "concerted effort to enforce the existing policy" in early 2000. Each Unit Manager issued a memorandum to offenders to make sure they were aware of the policy and the memos were posted in living units. Officer Melvin has provided a copy of the memorandum which states:

> The noise level of the West-Seg Unit is to be held to an acceptable level. Screaming or yelling, kicking or banging on your door or cell front will not be tolerated. Disciplinary reports will be issued for such behavior. (Def. Memo, Melvin Aff.)

The defendants do not specifically state whether the memo was directly given to the plaintiff.

Defendant Snyder was at the relevant times in the plaintiff's complaint the Director of the Illinois Department of Corrections. He oversaw 59 different facilities in Illinois. Snyder states that he is not familiar with the plaintiff and does not know him. Snyder states that he has no personal knowledge of the disciplinary tickets received by the plaintiff. Lastly, the signature that purports to be Snyder on several Administrative Review Board recommendations were actually signed by designees. In his deposition, the plaintiff states that he is suing Snyder because of his position at the Illinois Department of Corrections.

In his deposition, the plaintiff states that he did not intend to claim that the insolence tickets violated his First Amendment freedom of religion rights. The plaintiff says he does not practice any particular religion. (Demo, p. 24)

## II.  LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56©).  A "material fact" is one that "might affect the outcome of the suit."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  Id.

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970);  Schroeder v. Barth, Inc., 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994).  "Summary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted."  Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

### III.  DISCUSSION

A.  PERSONAL KNOWLEDGE

The defendants argue that the plaintiff has failed to show how Defendant Snyder has any personal knowledge of the implementation of the noise policy at Pontiac Correctional Center or how it might have impacted the plaintiff.  "(A) defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983."  Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981).  In addition, the doctrine of respondeat superior (supervisor liability) does not apply.  Pacelli v. DeVito, 972 F.2d 871, 877 (7th Cir. 1992). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right."  Vance v Peters, 97 F.3d 987, 992 (7th Cir. 1996).  There is no evidence before this court that Defendant Snyder had any involvement in the allegations in the plaintiff's complaint.

B.  NOISE POLICY

The plaintiff has failed to demonstrate any way that the noise policy or its implementation at Pontiac Correctional Center is unconstitutional.  Insolence is defined by the disciplinary rules as "[t]alking, touching, gesturing, or other behavior which harasses, annoys, or shows disrespect." 20 Ill. Admin. Code 504.304.  The void-for-vagueness doctrine under the due process clause is grounded in the principles of fair warning or notice.  Smith v. Goguen, 415 U.S. 566(1974).  Due process in terms of prison regulations requires "fair notice of prohibited conduct before a sanction can be imposed."  Williams v. Nix, 1 F.3d 712, 716 (8th Cir.1993); see also Rios v. Lane, 812 F.2d 1032, 1038 (7th Cir. 1987).

The plaintiff has failed to respond to the motion for summary judgement.  Therefore he has not demonstrated that the insolence regulation is vague on its face, and he has failed to provide any evidence that he was not given fair warning.   The plaintiff has also failed to provide any evidence that the regulation violated his Eighth Amendment or First Amendment rights.

The defendants motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 23]  The Clerk of the Court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) The agency having custody of the Plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.**

**3) The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**4)  The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

**5) The plaintiff's motion for a court order is denied as moot. [d/e 56]**

Entered this 7th  day of September, 2005.

              s\Harold A. Baker
            _____
               HAROLD A. BAKER
             UNITED STATES DISTRICT JUDGE